IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION AT KANSAS CITY

| | |
|---|---|
| PEGGY RAY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cause No.: 4:07-cv- 00673-ODS |
| ) | |
| WERNER CO., NEW WERNER HOLDING ) | |
| CO., INC., and W.W. GRAINGER, INC., ) | |
| ) | |
| Defendants. ) | |

**SUGGESTIONS IN SUPPORT OF DEFENDANTS WERNER CO., NEW WERNER HOLDING CO., INC. & W.W. GRAINGER, INC.'S MOTION TO STRIKE THE TESTIMONY OF STANLEY KISKA**

COME NOW Defendants, by and through undersigned counsel, and for their Suggestions in Support of their Motion to Strike the Testimony of Stanley Kiska, ("Kiska") state as follows:

**I. Introduction**

Plaintiff Peggy Ray disclosed Stanley Kiska of Integra Engineering, P.C. as her liability expert in her Rule 26(a)(2)(A) disclosures and indicated that he would testify that defendants' ladder was defective. *See Expert Designation of Peggy Ray, attached hereto as Exhibit A.* Kiska is of the opinion that the ladder was defectively designed, manufactured and that Werner failed to warn of known risks of the ladder. He concluded that the ladder "walked" some distance forward during the course of the accident, causing Mr. Ray to fall to the ground. *See Expert report of Stanley Kiska, attached hereto as Exhibit B.*

Kiska admits that he does not know for certain what happened during the accident. He testified that his version of the timing of the events is only a possibility. *See Deposition of Stanley Kiska, attached hereto as Exhibit C, pg. 154, lines 7 – 10.* Expert testimony that is

speculative is not competent proof and contributes nothing to a legally sufficient evidentiary basis.  *J.B. Hunt Transport, Inc. v. General Motors Corp*., 243 F.3d 441 (8th Cir.  2001).

At his deposition, Kiska produced a prototype warning label that he believes should have been affixed to the ladder in question.  *Exhibit C, pg. 68, lines 7 – 10, deposition exhibit A.*  Kiska also testified that he has developed the "induced walking test" to compare the resistance of different ladders to racking.  *Exhibit C, pg. 134, lines 8 – 12.*

Kiska's own deposition testimony illustrates that his testing methodology and resulting opinions on these topics are completely unreliable and that his opinions have not been peer reviewed or generally accepted within the engineering community.  As such, his testimony should be stricken.

## II. Law and Argument

Expert testimony is allowed under Fed.R.Evid. 702 by a qualified expert witness with specialized knowledge who "will assist the trier of fact to understand the evidence or to determine a fact in issue."  Fed.R.Evid. 702.  The question of whether Kiska's opinions are admissible is controlled by *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786 (1993) and *Kumho Tire Co., Ltd.v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167 (1999). *Daubert* requires a district court judge to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."  *Daubert at* 589.  This inquiry is "a flexible one," not governed by "a definitive checklist or test."  *Id.* at 594.

Potentially pertinent factors to a district court judge's gate-keeping determination include whether the expert's theory or technique: (1) can be (and has been) tested; (2) has been subjected to peer review and publication; (3) has a known or potential rate of error and standards

controlling the technique's operation; and (4) enjoys general acceptance within a relevant scientific community. *Id.* at 593-595.

The gate-keeping obligation under *Daubert*, which requires an inquiry into both relevance and reliability, applies to all expert testimony. *Kumho Tire,* 526 U.S. at 138. The objective of such a requirement is to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. Where the expert testimony's "factual basis, data, principles, methods, or their application are called sufficiently into question, the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'" *Id.* at 149.

### a. Kiska's Testimony Regarding his Warning Labels Does Not Satisfy the *Daubert* Requirements for Reliability

At his deposition, Kiska produced an incomplete prototype warning label that he believed should have been affixed to the ladder in question. *Exhibit C, pg. 68, lines 7 – 10.* Kiska's prototype label contains a pictogram and indicates that a user should have someone else hold the ladder whenever the work prevents the user from holding onto the ladder. *See Exhibit A to the Deposition of Stanley Kiska, attached hereto as Exhibit D.* By Mr. Kiska's own admission, this label is not ready for use. *Exhibit C, pg. 69, lines 6 – 8.*

This label was never mentioned in Kiska's expert report or at any point prior to his deposition. He admitted in his deposition that no specific warning language was included in his report. *Exhibit C, pg. 64, lines 8 – 12.* Kiska's expert report only states that "they failed to exercise even the most minimal effort in warning users that the ladder might become unstable suddenly and without warning." *Exhibit B, pg. 5- 6.* Kiska's report has not been supplemented to date.

3

The ladder in question was affixed with several safety instructions and warning labels. One such warning is, "When possible, have someone hold the ladder." Tim Blosser, a co-worker present at the time of Mr. Ray's fall, testified that he offered to hold the ladder for Mr. Ray, but that Mr. Ray declined his assistance. *See Deposition of Tim Blosser, attached hereto as Exhibit E. pg. 26, lines 2 – 15, pg. 14, line 21 – pg. 15 line 1*. Mr. Ray either failed to read the warning labels or ignored the warnings. By Mr. Kiska's own admission, if someone would have held the ladder for Mr. Ray, the accident would have been prevented. *Exhibit C, p. 89, lines 11 – 25*. To avoid duplication, defendants direct the Court to their Motion for Partial Summary Judgment, filed herewith.

Kiska's testimony regarding his prototype warning labels fails the *Daubert* test for reliability because his warning labels have not been sufficiently tested, have not been subject to peer review and are not generally accepted within the ladder industry.

The Eight Circuit has rejected expert testimony concerning failure to warn and inadequate instructions when the expert has not drafted or designed instructions or tested the effectiveness of the proposed warning.

In *Jaurequi v. Carter Mfg. Co., Inc*., a product liability action, expert testimony that the warnings on a combine were deficient in placement, design, orientation, and content was not reliable and thus was inadmissible under *Daubert*. Neither expert had created or even designed a warning device which would have been more appropriate, tested its effectiveness, or pointed to other manufacturers of farm machinery who were employing the suggested warnings at the time the product was manufactured. *Jaurequi v. Carter Mfg. Co., Inc*., 173 F.3d 1076 (8th Cir. 1999).

An identical result was reached in *Pestel v. Vermeer Mfg. Co.* The Court held that the trial court did not abuse its discretion in excluding under *Daubert* the testimony of a mechanical
4

engineer who had developed a model of a fabricated guard for use on a stump remover.  The engineer admitted that he would not use guard in its present state, that he had not tested the guard, that the concept of guard was still evolving and that it had not been generally accepted.  The engineer had also not contacted others in the industry to see if they had attempted to create a similar type of device.  *Pestel v. Vermeer Mfg. Co.*, 64 F.3d 382 (8th Cir. 1995).

Kiska admitted that the warning label he devised was an incomplete prototype.  *Exhibit C, pg. 68, lines 14 –19.*  He further admitted that there had been no peer review of the warning label.   He testified that "it would be the prudent thing to do to devise a series of tests with subjects and so forth to evaluate the content of the label to make sure that a preponderance of people who look at it can read it and understand it." *Exhibit C, pg. 68, line 20 – pg. 69, line 8.*  He admits that he has done none of this.  *Exhibit C, pg. 69, line 24 – pg. 70, line 1.*

Submission to the scrutiny of the scientific community is a component of "good science" in part because it increases the likelihood that substantive flaws in methodology will be detected.  *Peitzmeier v. Hennessy Indus., Inc.,* 97 F.3d 293, 297 (8th Cir. 1996).   Because Kiska's prototype label has not been sufficiently tested or peer reviewed, the potential for flaws in his theories is considerable and the testimony is not reliable as required by *Daubert*.

Additionally, Kiska testified that he is not aware of any other ladder manufacturer in the world that uses a label that is substantially similar to his proposed label.  *Exhibit C, pg. 72, line 24 – pg. 73, line 5.*  He admitted that the American National Standards Institute Label Task Force Committee has not endorsed any of his labels.  *Exhibit C, pg. 73, lines 17 – 25.*

Because Kiska admits that his prototype label has not been subject to peer review, has not been tested and is not used by any other ladder manufacturer, his testimony on the matter should be stricken.

b. **Kiska's Testimony Regarding the "Induced Walking Test" Does Not Satisfy the *Daubert* Requirements for Reliability**

Kiska's testimony regarding the "induced walking test" fails the *Daubert* test for reliability because the opinions expressed have not been tested, have not been subject to peer review and are not generally accepted within the scientific and engineering community.

During his deposition, Kiska testified that he developed the "induced walking test." *Exhibit C, pg. 134, lines 8 – 12.* He testified that he developed this test to quantify the racking resistance of different ladders. *Exhibit C, pg. 134, line 19 – pg. 135, line 5.* This test was the basis for Kiska's opinion that the ladder in question was unstable.

Kiska admitted in his deposition that he has not tested the accident ladder or an exemplar of the accident ladder using the "induced walking test". *Exhibit C, pg. 129, line 25 – pg. 130, line 8.* Kiska's report has not been supplemented to reflect that any testing had been done to date. As Kiska's opinion that the ladder was unstable is based on the "induced walking test", these opinions should be stricken as he has not tested the ladder in question using that test.

Widespread acceptance can be an important factor in ruling particular evidence admissible, and a "known technique which has been able to attract only minimal support within the community may properly be viewed with skepticism." *Daubert,* 113 S.Ct. at 2797. Here, in addition to failing the testing requirement, there is no evidence that Kiska's "induced walking test" enjoy general acceptance within the relevant scientific community or that it has been peer reviewed.

Kiska admitted that the "induced walking" test has not been peer reviewed by any other engineers. *Exhibit C, pg. 134, line 24 – pg. 135, line 5.* He has not submitted the test to any engineering journals for review. *Exhibit C, pg. 137, lines 5 – 10.* He testified that the test is

6

Case 4:07-cv-00673-ODS   Document 144   Filed 09/02/08   Page 6 of 8

used by him solely in the evaluation of lawsuits and that he has not yet testified about it before a jury. *Exhibit C, pg. 136, lines 5 -10.*

Mr. Kiska also readily admitted that the "induced walking" test has not been endorsed by any industry or government standard. *Exhibit C, pg. 134, line 19 – pg. 135, line 5.* He agreed that his theory was not widely dispersed and is not generally accepted in the engineering field. *Exhibit C, pg. 137, lines 15 -22.*

Because Kiska admits that the "induced walking test" has not been tested, has not been subject to peer review, and is not generally accepted with the scientific community, his testimony on the matter should be stricken.

### III. Conclusion

Kiska's opinions and testimony regarding his prototype warning label and the "induced walking test" are not reliable as required by *Daubert*. He admits that these theories have not been subject to peer review, have not been tested and are not generally accepted within the relevant scientific community. Kiska's testimony does not meet the requirements of Fed.R.Evid. 702 or the standards set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc*. Accordingly, this Court must exclude Kiska's testimony regarding any warning labels he has developed and the "induced walking test".

WHEREFORE, Defendants respectfully request that the testimony of Kiska be stricken and for all such other relief as this Court deems just and proper.

Respectfully submitted,

      /s/Joseph R. Swift
Joseph R. Swift #37241
BROWN & JAMES, P.C.
1010 Market, 20th Floor
St. Louis, Missouri 63101
314-421-3400
314-421-3128 (fax)
jswift@bjpc.com

Michael A. Childs #29697
BROWN & JAMES, P.C.
1100 Main Street, Suite 1900
Kansas City, Missouri 64105
816-472-0800
816-421-1183 (fax)
mchilds@bjpc.com

*Attorneys for Defendants Werner Co., New Werner Holding Co., Inc. & W.W. Grainger, Inc.*

## CERTIFICATE OF MAILING

I hereby certify that on the 2nd day of September, 2008, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon the following:

Mr. Stephen M. Gorny
Bartimus, Frickleton, Robertson & Gorny, P.C.
11150 Overbrook Rd., Ste. 200
Leawood, KS 66211
Telephone: 913-266-2300
Facsimile: 913-266-2366
*Attorneys for Plaintiff*

      /s/Joseph R. Swift

8292932