WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

PEGGY RAY, )
 )
 Plaintiff, )
 )
vs. ) Case No. 07-0673-CV-W-ODS
 )
WERNER LADDER, INC., et al., )
 )
 Defendants. )

## ORDER AND OPINION GRANTING (1) DEFENDANTS' MOTION TO STRIKE AND (2) DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Harry Ray's surviving spouse, Peggy Ray, brought this suit alleging her husband died as a result of falling off a ladder manufactured by Defendant Werner Ladder. The Third Amended Complaint asserts various claims, including claims of strict liability for defective design and manufacture (Count I) and failure to warn (Count III). Defendants seek to strike certain portions of Plaintiff's expert's testimony that is relevant to these (and perhaps other) counts. In addition, Defendants seek summary judgment on Count III. Both motions (Doc. # 141 and Doc. # 143) are granted.

## I. BACKGROUND

Count III alleges that the ladder in question lacked an adequate warning about the ladder's propensity to "rock" or "walk" causing the user to lose his or her balance and fall. The undisputed facts demonstrate that warnings were placed on the ladder. The instructions for "Proper Set Up" directed the user to "[p]lace all four feet on firm level ground to prevent excessive movements." The instructions for "Proper Climbing and Use" are as follows:

1. DO NOT OVER-REACH. You may lose your balance and/or
 tip the ladder. Keep center of waistline between side rails
 and use caution whether climbing, pushing or pulling
 anything while on the ladder.

2. Always face ladder and maintain a firm grip while on it.

3. Never walk, bounce or move ladder while climbing or standing on it.

\* \* \*

8. When possible, have someone hold the ladder.

The ladder also warns the user to "KEEP BODY CENTERED BETWEEN SIDE RAILS. DO NOT OVERREACH."

Harry Ray was using the ladder while on the job. Tim Blosser was also present; he offered to hold the ladder while Harry was using it, but Harry declined the offer. Harry had been using ladders for nearly forty years.

Plaintiff has designated Stanley Kiska of Integra Engineering P.C. as an expert witness. Two aspects of his opinion are pertinent to this discussion. First, Kiska proposes to testify that a prototype warning label he has prepared should have been affixed to the ladder. During his deposition, Kiska conceded the label he prepared is not ready to put on a ladder because he has not finished it and it has not been tested in the manner in which warning labels are usually tested. Second, Kiska proposes to testify that a test he designed demonstrates the ladder in question was unusually prone to moving or "racking." In response to Defendants' motion, Plaintiff explains that the test utilized in the industry is called a "racking test" and involves hanging a weight on the bottom step of the ladder. Lateral force is then applied to the ladder to determine how much the ladder twists and the level of force necessary to cause one or more of the ladder's legs to lift off the ground. Kiska developed a modified form of this test he refers to as an "induced walking test." The modifications consist of placing the weight closer to the top of the ladder and measuring (and divining some meaning from) the distance the ladder's leg(s) rise off the ground when various amounts of lateral force are applied. Kiska's "induced walking test" has not been peer reviewed, examined, or otherwise utilized. Kiska's report does not indicate he subjected the ladder Harry Ray used to the induced walking test.

2

## II. DISCUSSION

### A. Motion to Strike

Defendants do not quarrel with Kiska's qualifications, but allege certain aspects of his testimony is inadmissible under Rule 702 of the Federal Rules of Evidence and the Supreme Court's decision in <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993). The Court agrees.

Rule 702 permits the use of specialized knowledge if it will "assist the trier of fact to understand the evidence or to determine a fact in issue," but only if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Rule 702 was promulgated following the Supreme Court's decisions in <u>Daubert</u> and <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137 (1999), which established the district court's role as a "gatekeeper" to insure that expert testimony is relevant, reliable, and helpful to the trier of fact. Case law establishes a list of factors that, depending upon the facts of the case and the field of expertise at issue, may be helpful in conducting this inquiry. These factors include "(1) whether the expert's methodology has been tested; (2) whether the technique has been subjected to peer review and publication; (3) whether the technique has a known or knowable rate of error; and (4) whether the technique has been generally accepted in the proper scientific community." <u>Turner v. Fire Equipment Co.</u>, 229 F.3d 1202, 1207-08 (8th Cir. 2000) (citing <u>Daubert v. Merell Dow Pharm., Inc.</u>, 509 U.S. 579 (1993)). These factors are guides; not all of them may be relevant in a given field, and unlisted factors may be useful in a particular case. <u>Kumho Tire</u>, 526 U.S. at 150; <u>Jaurequi v. Carter Mfg. Co.</u>, 173 F.3d 1076, 1082 (8th Cir. 1999).

Plaintiff declares she will not seek to admit evidence of Kiska's prototype warning "unless defendants open the door to such evidence." The Court has difficulty divining a circumstance in which the door could be opened. The key issue is not whether a different warning could be created; the key issue is whether a better warning could be

3

created. Even if Defendants contend there is no evidence of a "better" warning, Kiska's prototype could not be admitted because there is no reason to believe his prototype is "better" than what was already on the ladder. Kiska's statements about his prototype demonstrates any testimony about its efficacy would be unreliable because his proposed warning has not been tested in the manner he concedes a warning should be tested.

Plaintiff argues Kiska's induced walking test is admissible because it is based on and derived from the standard racking test used in the industry. This argument misses the mark because the issue is whether the test Kiska used is reliable – and nothing in the record permits the Court to conclude that it is. Kiska has changed at least one aspect of the standard test – the placement of the weight – because he believes it provides a better indication of a ladder's relative tendency to move. His belief does not make it so, and there is nothing in the record to indicate Kiska is correct. Similarly, he finds meaning in the vertical distance the ladder's leg(s) rise, while the standard test does not – and nothing in the record demonstrates the meaning he derives is of any value.

The induced walking test has not been peer-reviewed, utilized by other experts, or accepted in the field. These are important factors when discussing engineering principles, particularly those designed to divine meaning from measurements that can be made for every product of a given type. Different results may be had by placing the weight higher on the ladder, but how does the Court (or the jury) know those differences are important? Different ladders may rise a greater distance than others, but what do those differences mean? Absent some indication beyond Kiska's unilateral belief that the induced walking test produces meaningful and reliable information, his testimony based on that test may not be admitted.

## B. Summary Judgment on Count III

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party

4

Case 4:07-cv-00673-ODS   Document 153   Filed 11/03/08   Page 4 of 7

is entitled to a judgment as a matter of law." See generally Williams v. City of St. Louis, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Get Away Club, Inc. v. Coleman, 969 F.2d 664 (8th Cir. 1992). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588-89 (1986); Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984), cert. denied, 470 U.S. 1057 (1985). However, a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the . . . pleadings, but . . . by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

> The elements of a cause of action for strict liability-failure to warn are: (1) defendant sold the product in question in the course of defendant's business; (2) the product was unreasonably dangerous at the time of sale when used as reasonably anticipated without knowledge of its characteristics; (3) the defendant did not give adequate warning of the danger; (4) the product was used in a reasonably anticipated manner; and (5) plaintiff was damaged as a direct result of the product being sold without an adequate warning.

Tune v. Synergy Gas Corp., 883 S.W.2d 10, 13 (Mo. 1994) (en banc). "There are two separate requirements of causation in a failure to warn case: (1) the product for which there was no warning must have caused plaintiff's injuries, and (2) the plaintiff must show that a warning would have altered the behavior of those involved in the accident." Id. at 14.

The record demonstrates Plaintiff cannot satisfy the second component of the causation element. In this case, there are warnings about the dangers involved in using the ladder and instructions on how to use it properly. Moreover, the danger in question – that if one twists or shifts one's weight off the center of the ladder there is a risk that the ladder will become imbalanced and cause the user to fall – is readily apparent to

5

anyone using a ladder. Missouri law does not require manufacturers to warn of dangers that are open and obvious or commonly known. Campbell v. American Crane Corp., 60 F.3d 1329, 1333 (8th Cir. 1995) (holding Missouri law did not require warning that a person walking on the boom of a crane might fall off and injure themselves).

The danger that a ladder would move if the user's weight shifted away from the ladder should have been particularly apparent to Harry Ray, who had been using ladders for nearly forty years. Plaintiff characterizes this as an assumption about Harry, but it is an assumption Missouri law permits. In Menz v. New Holland North America, Inc., the Eighth Circuit was confronted with a case involving a tractor that rolled over and pinned the operator to the ground, injuring him. The plaintiff, who estimated that he had used the tractor for "hundreds of hours," had installed a front-end loader and was using the loader to transport dirt from the bottom of a levee to a nearby hill to decrease the incline of the hill. The tractor became imbalanced when the plaintiff raised the loader to dump the dirt, undoubtedly because the tractor was not on level ground when this maneuver was attempted. The plaintiff filed suit, alleging (among other things) that the defendants failed to warn users of the risk that the tractor might become imbalanced if a heavy load was lifted while the tractor was sitting on the incline of a hill. After holding the plaintiff's claim failed for lack of expert evidence, the Court of Appeals held "even if expert testimony were not required, Menz failed to provide any other evidence demonstrating a warning would have altered his behavior. Although Missouri law recognizes a rebuttable presumption that a warning will be heeded, this presumption arises only when there is sufficient evidence from which a jury could find the plaintiff did not already know of the specific danger involved." 507 F.3d 1107, 1112 (8th Cir. 2007). The court found it significant that the plaintiff had operated the tractor for a long time and knew from "common sense" that a tractor will tip over if it is driven over a sufficiently steep incline and that he needed to be careful while carrying a load on a hill.

In the case at bar, there is no evidence that would permit a jury to conclude Harry Ray did not know that if he leaned or twisted the ladder would rock or move and he would become imbalanced. To the contrary, common sense dictates that balance will be lost if one twists or leans while on a ladder. Common sense also dictates that a

6

ladder will be more stable if a second person holds it – but Harry declined such assistance. On this record, Plaintiff is not entitled to a presumption that Harry would have acted differently if a different warning was on the ladder and a jury cannot conclude alleged inadequacies in the warning led to Harry's injuries.

### III. CONCLUSION

For these reasons, Stanley Kiska will not be permitted to testify about his prototype warning label or the results of the induced walking test. Furthermore, summary judgment is granted to Defendants on Count III of the Third Amended Complaint.
IT IS SO ORDERED.

DATE: November 3, 2008

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
UNITED STATES DISTRICT COURT